United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT RONALD ZEITLER,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 5:16-cv-00862-EJD<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 13, 19 |

Plaintiff Scott Ronald Zeitler ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to obtain review of a final decision by the Commissioner of the Social Security Administration[1] denying his claim for Disability Insurance Benefits ("DIB") benefits. In a Motion for Summary Judgment, Plaintiff seeks an order reversing the decision and awarding benefits. Dkt. No. 13. The Commissioner opposes Plaintiff's motion and seeks summary judgment affirming the decision denying benefits. Dkt. No. 19.

Because the record reveals the Commissioner's decision is not supported by substantial evidence certain critical aspects, Plaintiff's motion will be granted and the Commissioner's cross-motion will be denied for the reasons explained below. Rather than order the payment of benefits in this instance as requested by Plaintiff, the court will remand the action to the Commissioner for further administrative proceedings.

---

[1] The current acting Commissioner of Social Security, Nancy A. Berryhill, is automatically substituted as defendant in place of her predecessor. Fed. R. Civ. Proc. 25(d).

Case No.: 5:16-cv-00862-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
1

# I. BACKGROUND

## A. Procedural History

Plaintiff applied for DIB on July 19, 2012, alleging a disability onset of May 11, 2011. Tr., Dkt. No. 11, at 42. He seeks benefits for a "closed period" from the onset date through October 29, 2012. Plaintiff's claim was initially denied by the Commissioner on February 1, 2013. Id. at 70. Plaintiff requested reconsideration of that decision, which was denied by the Commissioner on August 2, 2013. Id. at 75, 76.

Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ"), which occurred before ALJ T. Patrick Hannon on June 23, 2014. Id. at 12-24. Plaintiff did not appear at the hearing but was represented by counsel. The ALJ heard testimony from one witnesses, Lorian I. Hyatt, a vocational expert. In a written decision dated September 15, 2014, the ALJ ultimately found that Plaintiff was not disabled.

Plaintiff sought administrative review of the ALJ's determination. Id. at 5. On January 20, 2016, the Appeals Council denied the request for review, and the ALJ's decision became the final decision of the Commissioner. Id. at 1. Plaintiff then commenced this action, and the instant summary judgement motions followed.

## B. Plaintiff's Personal, Vocational and Medical History

According to his application for benefits, Plaintiff was born on March 22, 1966, and was 48 years old at the time of the hearing. Id. at 116. He obtained an undergraduate degree from Columbia University and a MBA degree from NYU. Id. at 291. Plaintiff had worked at Cisco Systems, Inc. as a finance manager from 1991 to 2000, and as a director of finance from 2000 until May 11, 2011. Id. at 52.

Plaintiff filed for DIB due to obsessive-compulsive disorder ("OCD"), anxiety and depression. Id. at 42. On April 12, 2011, Plaintiff made phone contact with his treating psychiatrist, Dr. Ann M. Bogan, from work. Id. at 244. He reported he was "doing ok" and that "the physical anxiety is better," which he rated at four out of ten for intensity. Plaintiff reported that work was very stressful, but he stated his OCD symptoms were relatively low. Plaintiff spoke

with Dr. Bogan again on April 27, 2011, and reported regular "OCD thoughts of not being able to work" and increased anxiety. Id. On May 4, 2011, Plaintiff reported to Dr. Bogan his OCD symptoms of "doing harm to son" were prominent. Id. At a follow-up appointment on May 6, 2011, Plaintiff reported he was very scared after his son fell, and that he stayed in bed all day. Id. at 243. Dr. Bogan increased the dosage of Plaintiff's medications (Seroquel, Clonazepam, Zoloft).

On May 7, 2017, Plaintiff contacted Dr. Bogan, who observed that Plaintiff was very anxious with OCD "of his doing inevitable harm to son." Id. at 242. Dr. Bogan reported Plaintiff needed reassurance that he would not harm his son, and she told Plaintiff his thoughts are directed at his fear of harming his son rather than a real desire to do harm to his son.

Subsequent records show that Plaintiff's symptoms continued to worsen. On May 11, 2011, Dr. Bogan referred Plaintiff to the emergency room for increasing OCD symptoms, and Plaintiff was admitted to an inpatient psychiatric program at Stanford Hospital that same day under the supervision of Dr. Lawrence Fung. Id. at 364-66. Dr. Bogan reported to the intake psychiatrist that Plaintiff goes into a "crisis" when his medication is changed on an outpatient basis, and she hoped Plaintiff could be switched to different medications. Id. at 359. Records from Stanford Hospital show that Plaintiff's medications were changed to reduce and eventually discontinue Seroquel, and to include Risperidone and Ativan. Plaintiff also participated in cognitive behavioral therapy. He was discharged from Stanford Hospital on May 20, 2011. Id. at 289. Dr. Bogan's treatment notes indicate Plaintiff then attended an outpatient OCD program in Sacramento in May and June, 2011. Id. at 225, 233.

On July 13, 2011, Dr. Bogan opined that Plaintiff was expected to return to work on July 19, 2011. Id. at 222. However, a new therapist, Dr. Donald Dufford, extended Plaintiff's expected return date to August 14, 2011. Id. at 370.

The record shows that Plaintiff continued treatment with Dr. Bogan until August 28, 2011. On that date, Plaintiff called Dr. Bogan and reported high anxiety about returning to work. Id. at 209. His OCD and other symptoms of anxiety were mild. On August 29, 2011, Plaintiff left a

Case No.: 5:16-cv-00862-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
3

voicemail for Dr. Bogan and reported he could not return to work due to high anxiety. Id. During a later telephone call, Plaintiff stated he wanted to abandon Cymbalta in favor of Lexapro. Dr. Bogan recommended Plaintiff transfer treatment to the Stanford OCD Clinic and commence Wellbutrin. On August 30, 2011, Dr. Bogan extended Plaintiff's leave from work for an additional two weeks. Id. at 208.

Plaintiff began treatment at the Stanford OCD Clinic on October 18, 2011, under the supervision of Dr. Elias Abdoujaoude. Id. at 282. Plaintiff's medications were again modified; Cymbalta was phased out and Clomipramine was commenced. Id. at 284. Plaintiff's leave from work was also extended by one month.

Plaintiff was seen for a follow-up visit at Stanford on November 1, 2011. Id. at 281. Plaintiff reported feeling less "zombielike" and with a better mood and more energy. He felt the depression was clearing up and was not having intrusive thoughts about harming his family. Plaintiff reported spending days at home, taking long walks and spending time with his son. Plaintiff also stated his goal was to return to work in one month. Plaintiff reported similar improvement on November 15, 2011. Id. at 280.

At a follow-up appointment at Stanford on December 14, 2011, Plaintiff reported "unbearable anxiety" after returning to work. Id. at 278. He reported that his OCD was in "good control" and that he was not having intrusive thoughts of harming his wife or son or about "vegetating." Plaintiff also felt "generally better" on his current regimen. At another follow-up appointment on January 10, 2012, Plaintiff reported trouble getting back to work due to anxiety but that his OCD symptoms were under control. Id. at 277. On January 11, 2012, Dr. Abdoujaoude noted that Plaintiff's mood and OCD were significantly improved. Id. at 276. However, treatment notes from February 21, 2012, indicate that Plaintiff was on a leave of absence from work as of the week prior, and was seeing a new therapist, Dr. Tamara Hartl. Id. at 273.

Plaintiff continued treatment with Stanford. Notes from a follow-up appointment on

Case No.: 5:16-cv-00862-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
4

September 24, 2012, indicate Plaintiff reported doing "good" and was expected to return to work on October 29, 2012. Id. at 253. His appetite, sleep and energy were all normal. He reported regularly leaving the house to run errands and go to restaurants. He also enjoyed reading and playing an online Scrabble game. Plaintiff stated his OCD shows "small flare ups but nothing significant."

The final treatment notes from Stanford from November 20, 2012, through June 24, 2013, indicate that Plaintiff's OCD and anxiety continued to improve overall. Id. at 371-383. Plaintiff was waiting to hear from Cisco about a new position before returning to work, but he was eventually terminated after being provided a period to apply for new employment internally.

## II. LEGAL STANDARD

### A. Standard for Reviewing the ALJ's Decision

Pursuant to 42 U.S.C. § 405(g), the district court has authority to review an ALJ decision. The court's jurisdiction, however, is limited to determining whether the denial of benefits is supported by substantial evidence in the administrative record. 42 U.S.C. § 405(g). A district court may only reverse the decision if it is not supported by substantial evidence or if the decision was based on legal error. Id.; Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

"Substantial evidence" is more than a scintilla, but less than a preponderance. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). This standard requires relevant evidence that a "[r]easonable mind might accept as adequate to support a conclusion." Vertigan, 260 F.3d at 1049 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). A court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). The court must affirm the ALJ's conclusion so long as it is one of several rational interpretations of the evidence. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). However, the court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." Garrison v. Colvin, 759 F.3d 995, 1010 (9th

Case No.: 5:16-cv-00862-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

5

Cir. 2014).

## B. Standard for Determining Disability

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must also be so severe that a claimant is unable to do previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," given the claimant's age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

"The claimant carries the initial burden of proving a disability." Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (observing that the claimant must satisfy the burden on the first four steps of the evaluative process). If the claimant proves a prima facie case of disability, then the Commissioner has the burden of establishing the claimant can perform "a significant number of other jobs in the national economy." Thomas, 278 F.3d at 955; Bowen, 482 U.S. at 146 n.5 ("[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy."). "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." Thomas, 278 F.3d at 955.

The ALJ evaluates Social Security disability cases using a five-step evaluation process. 20 C.F.R. § 416.920. The steps require the following analysis:

(1) The ALJ must first determine whether the claimant is presently engaged in substantially gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled; otherwise the evaluation proceeds to step two.

(2) The ALJ must determine whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). If not, the claimant is not disabled; otherwise the

evaluation proceeds to step three.

(3) The ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments. 20 C.F.R. § 416.920(d). If so, the claimant is disabled; otherwise the analysis proceeds to step four.

(4) The ALJ must determine the claimant's residual functional capacity despite limitations from the claimant's impairments. 20 C.F.R. § 416.920(e). If the claimant can still perform work that the individual has done in the past, the claimant is not disabled. If the claimant cannot perform the work, the evaluation proceeds to step five. 20 C.F.R. § 416.920(f).

(5) In this step, the Commissioner has the burden of demonstrating that the claimant is not disabled. Considering a claimant's age, education, and vocational background, the Commissioner must show that the claimant can perform some substantial gainful work in the national economy. 20 C.F.R. § 416.920(g).

## III. DISCUSSION

The ALJ made the following findings and conclusions on the five steps: (1) for step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 11, 2012; (2) for step two, the ALJ determined Plaintiff had severe impairments, including generalized anxiety disorder, depressive disorder, and OCD; (3) for step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the requirements of the Listing of Impairments; (4) for step four, the ALJ determined that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, with a non-exertional limitation to work involving simple, routine and repetitive tasks, but that he is not capable of performing past relevant work; and (5) for step five, the ALJ determined that other jobs exist in significant numbers in the national economy that Plaintiff can perform.

In his motion, Plaintiff argues: (1) the ALJ erred by finding Plaintiff did not meet Listing 12.06(B); (2) the ALJ did not articulate specific and legitimate reasons to disregard the opinions of

Case No.: 5:16-cv-00862-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

7

Plaintiff's treating physicians; and (3) the ALJ did not appropriately consider the testimony of the vocational expert.

### A. The ALJ's Assessment of Treating Medical Opinions is Erroneous

Taking the arguments out of order, Plaintiff disputes the weight afforded to the opinions of his treating physicians. Plaintiff is correct to do so, as the ALJ did not properly support his assessment of the medical evidence.

In the context of Social Security adjudications, medical opinions are treated differently depending on the authoring doctor's relationship with the claimant. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Id. In fact, "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Trevizo v. Berryhill, No. 15-16277, --- F.3d ----, 2017 WL 4053751, at *7 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Id.

Where a treating doctor's opinions and conclusions are not contradicted by another doctor, those opinions and conclusions can only be rejected for "clear and convincing" reasons. Lester, 81 F.3d at 830. Where a treating doctor's opinion is contradicted by other medical evidence, the Commissioner must articulate "'specific and legitimate reasons' supported by substantial evidence in the record." Id.; see also Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). However, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831.

Here, the ALJ assigned little weight to the opinions of Plaintiff's treating physicians. As reasons for doing so, the ALJ explained that Dr. Bogan's opinions "appear to be temporary assessments/restrictions on the claimant's functioning to allow adequate time to undergo treatment." Tr. at 21. The ALJ stated further that Dr. Bogan's opinion was inconsistent with evidence showing Plaintiff was improving with treatment. Id. For Dr. Hartl, the ALJ discounted her opinion as "overall inconsistent with the evidence in the record, clinical findings, the level of care [Plaintiff] has received, and evidence of [Plaintiff's] activities." Id. at 22. He also described Dr. Hartl's opinion as "vague and imprecise," and "temporary assessments with are inconsistent overall with the treatment records in evidence." Id. As to the Stanford records, the ALJ classified the opinions as "temporary restrictions on [Plaintiff's] ability to return to work and ability to function while undergoing treatment and taking medication," rather than "long term" assessments of functioning. Id.

In contrast, the ALJ assigned great weight to the opinions of two non-treating, reviewing doctors, Dr. A. Garcia and Dr. K. Gregg. The ALJ found their opinions "were based upon a comprehensive review of the evidence," and consistent with other reports showing that Plaintiff gradually improved over time. Id. at 20-21.

The ALJ's rejection of the opinions of Plaintiff's treating physicians was legally erroneous for several reasons. First, the ALJ's restrictive focus on only one factor - consistency with the record - at the expense of the other factors relevant to assigning weights to medical opinions was improper. Indeed, the ALJ's decision does not demonstrate he considered the length of Plaintiff's treating relationship with his doctors, the frequency of the examinations, the nature and extent of the treatment relationships, or the supportability of the opinions. The ALJ's disregard of the

former factors is particularly troubling because the record shows Plaintiff treated with Dr. Bogan for nearly the entire relevant period and had no less than 30 contacts with her, including several in-person examinations. Plaintiff also underwent significant treatment at Stanford on both an inpatient and outpatient basis, and the notes from this treatment are extensive. Furthermore, Plaintiff treated with Dr. Hartl for approximately nine months, and her narrative report cannot be accurately classified as either vague or imprecise. The ALJ appears to have glossed over these facts merely by observing these doctors' opinions stem from "a treatment relationship" before completely discounting them. That statement is not enough for the court to find the ALJ understood the nature and quality of Plaintiff's treatment relationships. "This failure alone constitutes reversible legal error." Trevizo, 2017 WL 4053751, at *7.

Second, the ALJ did not provide "'specific and legitimate reasons' supported by substantial evidence in the record" in assigning little weight to the treating doctors' opinions. Lester, 81 F.3d at 830. For all three doctors, the ALJ determined their opinions were generally inconsistent with a trend of improvement he perceived from the record. But though there is some evidence in the medical reports to support that interpretation, it is nonetheless an incomplete and superficial characterization of the record as a whole. See Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (finding error where ALJ ignores evidence without explanation); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (stating that the court reviewing an ALJ's conclusions "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence'"). Instead, the medical evidence consistently shows that Plaintiff's condition, and in particular his anxiety disorder, manifested in fluctuating periods of severity such that it was well-controlled at times but was debilitating at others. For example, between August, 2011, and November, 2011, Plaintiff reported two periods of improvement in his symptoms, followed by two periods of extreme anxiety. As another example, Dr. Hartl opined on July 20, 2012, that Plaintiff's level of dysfunction impaired his social functioning such that it would be difficult for him to return to work, which is consistent the Stanford treatment records

from that same time showing that Plaintiff was mildly improving "but still quite impaired" and unable to work. Id. at 176, 259-60. And notably, the ALJ failed to cite any specific medical evidence he determined was inconsistent with the opinions of the treating physicians. Though the Commissioner attempts to explain this away by attributing Plaintiff's increased anxiety as situational to his job at Cisco, the ALJ's decision does not specifically articulate that finding and this court is unable to accept it on review. See Garrison, 759 F.3d at 1010. For these reasons, the ALJ's reliance on "overall gradual improvement" as a basis to discount the treating doctors' consistent opinions is not a rational interpretation of the evidence, at least as the ALJ's decision is currently framed. See Burch, 400 F.3d at 679.

Third, the ALJ overstated the extent of Plaintiff's daily activities and then used that overstatement as an additional basis to reject the treating doctors' opinions. The ALJ specified that Plaintiff was "able to attend to his personal care and hygiene, travel, manage his appointments, exercise, participate in treatment, and communicate with others." Tr. at 21. The ALJ also stated that Plaintiff "was able to provide a reliable history to providers and others during treatment," and "was able to focus and concentrate while reading, play online games, and search for work." Id. But excluded from this recitation is any description of how often and for what time periods Plaintiff was able to do any of these activities, and the record shows that Plaintiff was not able to function at this level for the entire relevant period. To the contrary, the earlier treatment records reflect that Plaintiff was unable to even get out of bed at one point, and Plaintiff obviously could not function at the level described by the ALJ while participating in an inpatient treatment program. In addition, it is equally unclear from the ALJ's decision why Plaintiff's robust involvement in his own mental health treatment reflects an ability to perform work involving simple, routine and repetitive tasks, when all of his treating doctors state otherwise. Absent more specific details about the frequency and extent of Plaintiff's activities, those tasks cannot constitute "substantial evidence" inconsistent with the informed opinions of his treating doctors.

Fourth, the ALJ rejected some opinions of Plaintiff's inability to work as "temporary

assessments" of Plaintiff's functioning. Given Plaintiff's condition and the circumstances of this action, this is not a legitimate reason capable of undermining the opinion of a treating physician. In rendering this artificial description, the ALJ overlooked the fact that Plaintiff was not suffering from an impairment that permanently prevented his ability to work, but rather one that left him temporarily unable to work for a defined period. Consequently, any assessment of Plaintiff's inability to work by any doctor would necessarily be a temporary one; a permanent or long-term restriction would in actuality be inconsistent with the record. The ALJ's criticism is faulty because it fails to recognize this reality. The unpublished case cited by the Commissioner in her opposition, Lenocker v. Astrue, 378 Fed. Appx. 709, 710 (9th Cir. 2010), is inapposite; far from the definitive return-to-work projection cited in that case, Plaintiff's treating doctors continually determined Plaintiff was unable to return to work and extended their projections on that basis.

Finally, the opinions of Dr. Garcia and Dr. Gregg cannot justify rejecting the opinions of Plaintiff's treating doctors. Though the ALJ assigned great weight to their reports, their opinions do not constitute substantial evidence in the absence of other corroborating factors, all of which have been disposed of for the reasons explained. See Lester, 81 F.3d at 831.

In sum, the ALJ's decision to afford little weight to all of Plaintiff's treating doctors' opinions is legally erroneous and not based on specific and legitimate reasons supported by substantial evidence in the record.

**B.    The ALJ's Step Three Decision is Not Supported by Substantial Evidence**

At Step Three, the ALJ determined Plaintiff did not meet the criteria of Listing 12.06. Plaintiff argues the ALJ decision under subsection (B) of Listing 12.06 is not supported by substantial evidence. The court must agree.

"Conditions contained in the 'Listing of Impairments' are considered so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Id. at 828 (citing 20 C.F.R. § 404.1520(d)). "Claimants are conclusively disabled if their condition either meets or equals a listed impairment."

Id.

Listing 12.06 covers anxiety and obsessive-compulsive disorders, which are characterized by "excessive anxiety, worry, apprehension, and fear, or by avoidance of feelings, thoughts, activities, objects, places, or people." 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.06. At the time of the hearing before the ALJ, a claimant could demonstrate disability from anxiety and obsessive-compulsive disorder under Listing 12.06 by producing medical documentation evidencing the condition under subsection (A), and by satisfying either subsection (B), which requires at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration, or subsection (C), requiring a "complete inability to function independently outside of the area of one's home." Id. As defined in the regulation, "marked" means "more than moderate but less than extreme." Id. at § 1200(C). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." Id.

For the first element, the Commissioner argues Plaintiff failed to submit qualifying evidence describing his condition sufficient to satisfy subsection (A). However, the Commissioner has not cited a relevant portion of the ALJ's decision embodying an opinion on this issue, and the court is unable to find any such opinion in the record. This argument therefore exceeds the scope of the court's review. See Garrison, 759 F.3d at 1010.

For the subsection (B) criteria, the ALJ found Plaintiff displayed a mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation of extended duration. For the first three considerations, the ALJ relied on the same description of Plaintiff's daily activities that he used to assign little weight to the opinions of Plaintiff's treating doctors. For reasons

explained in the preceding section, the ALJ's assessment of those activities is incomplete. As relevant to this issue, there is no indication the ALJ properly assessed whether the record shows Plaintiff could carry out any of the activities on an effective and sustained basis during the relevant period, with specific examples from the medical evidence. See 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00(C).

As to episodes of decompensation, those are defined as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence of pace." 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00(C)(4). They may be "inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system . . . or other relevant information in the record about the existence, severity, and duration of the episode." Id. "Repeated episodes of decompensation, each of extended direction" means three episodes within one year, each lasting for at least two weeks." Id. More frequent episodes of shorter duration may also qualify "if the duration and functional effects of the episodes are of equal severity." Id.

In his decision, the ALJ tersely concluded Plaintiff had not experienced any qualifying episodes of decompensation without providing any further explanation. But the medical records contain several indicators from which decompensation could be inferred, including significant alterations of Plaintiff's medication and periods during which Plaintiff required a more structured psychological support system from inpatient and outpatient programs and services. Because the decision does not show the ALJ considered this evidence in relation to whether Plaintiff experienced episodes of extended decompensation or equivalent shorter periods, the ALJ's assessment of the issue is incomplete.

The ALJ's Step Three decision is not supported by substantial evidence. The Commissioner must therefore reconsider whether Plaintiff satisfies Listing 12.06.

### C. The ALJ Must Re-evaluate the Testimony of the Vocational Expert

Plaintiff argues the ALJ did not appropriately consider the testimony of the vocational expert. The ALJ determined, however, that Plaintiff had a residual functional capacity ("RFC") to perform unskilled work at all exertional levels. The testimony of the vocational expert to show alternative work at Step Five was therefore not relevant to the ALJ's finding of non-disability.

In any event, the ALJ formulated an RFC for Plaintiff based upon an erroneous assessment of the record. See Robbins, 466 F.3d at 883 (requiring an ALJ to designate an RFC by "considering all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment'"). Thus, on remand, the ALJ must re-evaluate whether it is necessary to pose hypothetical questions to the vocational expert based on a revised RFC at Step Five.

## IV. ORDER

Based on the foregoing, Plaintiff's Motion for Summary Judgment (Dkt. No. 13) is GRANTED and the Commissioner's Motion for Summary Judgment (Dkt. No. 19) is DENIED.

The Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings consistent with this order. See Garrison, 759 F.3d at 1019 ("[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded.").

Judgment will be entered in favor of Plaintiff and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: September 19, 2017

EDWARD J. DAVILA
United States District Judge